Thank you very much. We'll call the next matter on calendar. Perez. Good morning, Your Honors, and may it please the Court, Dale Ogden for Jonathan Perez. I'll try to reserve two minutes for rebuttal and I'll watch my clock. Mr. Perez's sentence was functionally increased by over a month because he was filmed in BOP, not because he had anything to do with the filming. That, as my friend on the other side now concedes, is not enough. Rather, he had to voluntarily participate in this filming somehow. But I think that leads to two problems here. The first is that BOP's actual findings and conclusions don't contain anything to that effect. And as I point out in the brief, the Hill decision, the Wolf decision from the Supreme Court, I think stand for the proposition that we have to rely on what BOP actually did. We can't engage in this sort of post hoc rationalization. And the second issue, relatedly, there isn't some evidence of voluntary participation. Independent of that, the district court erred by not conducting de novo review following Perez's objections. I've intended to just address the due process issue unless the Court would like to direct me elsewhere. I did have some questions. I've spent a lot of time looking at prison regula and trying to figure out how we got to a 199 charge in this case. I mean, as I understand it, the 100 charges for BOP violations, that's like murder, kidnapping. Rioting, yeah, very serious stuff. Bad stuff. And this, it's hard for me to understand how this is in the same category as those. I did look. It seems like there are in the 300 series, it seems like if you smuggle in food, yeah, I mean, there's a penalty for that. But I just want to make sure there was never a finding of a 300 violation. It was only the 199. That's correct, Your Honor. Below when the magistrate judge held oral arguments, he asked the government about this, why didn't you just charge him for the 300 food series. And, of course, they didn't have an answer for that. And he pointed out. I thought they said something like too much time has passed and all the evidence has disappeared or something like that. I confess I don't quite understand the answer because there is a picture of him with the food. Does that matter? Sorry. Does that matter? Well, it's. Does it matter why they charged one series of violations as opposed to the other? Well, what matters is. From your client's point of view. Sure, Your Honor. What matters is that some evidence has to support what they actually charged him with, not something lesser. Because recall, the 300 series results in far less good time loss. I think the maximum is 14 days. I'm not sure what the typical situation is, but it's far less than the month and a half that we got. But he got the maximum for a 100 series, didn't he? Isn't 41 days the maximum? Correct. As I read the regs, that's correct, Your Honor. I think I've struggled with the same thing as to how do we get to the 199. And I think that's why I complain a little bit about trying to post hoc kind of fix what happened here is because it doesn't. I don't think at the end of the day it quite adds up. And I think what Hill and Wolf stand for the proposition for is that there's a reason we have these written requirements, you know, under due process. Because we need to know what the BOP was charging him with. He needs to be able to defend himself. One of the reasons is so that faced with scrutiny from the courts, the BOP acts fairly. And I think it defies that to, you know, if the government could sort of construct new findings that are a little bit more appropriate. Because at the end of the day, if you look at ERs, I believe, 136 and 139, it's clear that they thought knowing he was being filmed was enough. And that's a theory that I think they rightfully disclaim on appeal. So that alone, I think, forecloses the government's position here. If the Court doesn't have any questions about the due process issue. Sorry. No, but I have another question. What is his release date? Mid-December, December 18th, mid-December. He still has that date he had during the briefing? That's correct, Your Honor. I did check last night. It's still December 18th.  But if we were to grant relief, I mean, you would want us to grant it as soon as possible because he's on that clock now, isn't he? That's correct, Your Honor. I mean, we're just about to start if it hasn't started. We're getting a little late in the day. That's true, Your Honor. I would ask for that. You know, we did move to expedite the appeal. I appreciate the Court got us the first calendar available, so I do appreciate that. Yes, I would just signal that we are getting to that clock. You know, the second issue I raise on appeal is that the district court erred by not conducting de novo review. Judge Owens, I know you authored the Ramos decision, so I wanted to make sure I answered any questions Your Honor had about that. I think what Ramos stands for is that we do take the district courts at their word when they say they've done something, right? So if they say they've conducted de novo review, that's what they did. Here I think it's interesting because the district court doesn't appear to have done that. It says it's conducted de novo review only of the things to which we properly objected to, and then it goes on to define what a proper objection is, and it says you can't raise any new arguments, which is largely the case, but you also can't raise any old arguments that were before the magistrate judge, and I think, you know, the Sixth Circuit's decision in Pierce and Judge Wallace's unpublished concurrence in Moss kind of criticized these orders saying, well, that's a null set, right? A litigant can't ever win in that situation, and that sort of turns what de novo review is on its head, right? That's not how de novo review works. You're bound to re-raise certain arguments just like I am before this court. That's how de novo review works. So I think for either of those reasons, you know, obviously our first argument is the due process issue, and that's what gets my client the most relief at this moment. So we'd urge the court to grant relief on that. If the court doesn't have any other questions. Thank you, Your Honors.  Good morning, Your Honors. May it please the Court, Assistant U.S. Attorney Ryan Chapman for the appellee, Warden Engelman. Your Honors, the district court correctly dismissed the petition here because the disciplinary conclusion was supported by the minimally required sum evidence in the record. The DHO's conclusion was not without a modicum of evidence or otherwise arbitrary. Accordingly, the district court's decision should be affirmed. Well, it shouldn't take too long. Would you summarize what the sum evidence is? Of course, Your Honor. The first piece of evidence would be the screenshot of the TikTok video itself. Now, this screenshot provides some evidence by which the conclusion could be deduced, as this court phrased it in the Lane case. And the DHO's conclusion in this case was that Mr. Perez was complicit in the illicit activity here. What do you mean by complicit? With what activity? With the charged activity? The charged activity, Your Honor, the creation of the video, which was Prohibited Act 199, disruptive conduct most like Prohibited Act 108, possession of the cell phone. The other pieces of evidence in the record include the Chafee memo, Your Honor. Now, the magistrate judge did not rely on this memo, but it is unquestionably in the record, and the DHO did consider it, and it alone would constitute some evidence. I'd like to briefly address a point raised by Mr. Ogden, that the government is engaging in a post hoc rationalization here. That is not what is happening. As this court has stated, the conclusion of the DHO just has to be deduced from the evidentiary record, and that conclusion is what the government is doing here. And I think a comparable case on the facts would actually be the Hill case. Now, both parties cite Hill just for the sum evidence standard, but looking at the facts of Hill, a prison guard heard a commotion there. He opened a door and saw one inmate with a black eye, three inmates running away. Now, that guard never saw a fight, never heard a fight. The injured inmate denied any fight occurred, and the attacking inmates maintained their innocence. The Supreme Court held that even with no direct evidence there, that there was some evidence that those inmates had been fighting and upheld the disciplinary decision. That's a comparable case here. Sotomayor, was there any evidence that Mr. Perez possessed a cell phone? No, Your Honor, and that's why the government – that's why the BOP did not charge him with 108, which would be the possession itself. Any evidence that he consented to the videotaping? No direct evidence, Your Honor, but there is a reasonable inference that he did, and that's what the magistrate judge found. Or any evidence that he knew he was being videotaped? Again, no direct – well, I rephrase that, Your Honor. I believe the screenshot itself would constitute evidence, just from where the video was being taken, the angle of the video, how close it was. It would strain credulity to think that someone would not be aware that they were being filmed in that situation. Well, I think I disagree with you. I assume, you know, whoever did it didn't have a big video camera. It was probably a cell phone, right? Correct, Your Honor. And, you know, I mean, how – you know, a guy is here, whatever he's doing, flipping steaks or whatever he had, and somebody's here with a cell phone. How can you – I don't know. What's the standard of proof? Any evidence? How can that be, you know – how is there evidence that he knew he was being filmed or that he was complicit in it? What's the evidence? Just because he was close by? Yes, Your Honor, because – There were lots of people close by. Why weren't they all charged? Well, Your Honor, we don't know who was close by in that specific video. There were, I believe, seven other inmates who were filmed on various videos, and they were part of the investigation as well. But in this specific video, you know, the video was close by. And looking at the screenshot, the hashtags that were meant to share the video were all about, you know, life in prison, being locked up. It was clear that the purpose here was to show, look at what we're doing. We're getting lobster in prison. This guy cooking the lobster is the star of our video. Now, that is a reasonable inference that Mr. Perez, being the star of the video, consented to and agreed to be in the video. And as the Supreme Court stated in Hill, even if the evidence can be interpreted in multiple ways, as long as the government's conclusion is reasonable, it should be upheld under the standard. I just had another question about these regs. So in the video, he has a pair of scissors. He does, Your Honor. Are they allowed to have scissors in the dorm? I don't know for sure, Your Honor. I would assume not. I mean, it seems to me that scissors are a dangerous weapon in prison. These aren't like, you know, kids' paper-cutting scissors. These are like scissors you could stab someone with. And so I was just puzzled again when the guy's on video with scissors, which seems to me a violation, and the food's a violation, but we charge him with something that is neither of those things. I take it there was no discussion. I didn't see anything in the record about scissors being a violation here. No, Your Honor. I confess I could only speculate why the BOP did not charge him with anything else. But even setting that aside, some evidence supports the conclusion that he participated in this video and committed Prohibited Act 199. And if the Court has no further questions on this issue, I'd just like to briefly turn to the district court's decision here. You know, the government would submit that the court did conduct a de novo review and that looking at the cases the district court cited, they only stand for the proposition that objections need to be specific. And finally, even if the court does disagree with that and finds that the district court's review was insufficient, this court's de novo review would obviate that error. And unless the court has any further questions. I do have one quick question. Your friend said magistrate judge. The district court here was a magistrate judge? The magistrate judge did the report and recommendation, Your Honor, and it was reviewed de novo by the district judge. Gotcha. Thank you. Let me ask a question. You're from the U.S. Attorney's Office in Los Angeles, right? Correct, Your Honor. You have other cases before the same judge? I have before, Your Honor, yes. Is this like in this kind of case as usual standard of review? I confess, Your Honor, I'm not familiar with this particular judge's practice. I would note that the briefing points out that there are many judges in multiple districts that have written similar language into their orders here. And it's for that reason that would indicate that there is not a large-scale abdication of the district judge's responsibility. The language here that Mr. Perez complains of should be read narrowly, as stated in our written argument. Thank you, Your Honors. Thank you. Your Honor, just a couple of quick points. To the due process issue, the court doesn't get there. It agrees with me that the BOP never made the findings. My friend on the other side submits. As far as the questions about what some evidence exists, I think the camera angle argument and a lot of these contextual arguments all suffer from the same problem, that we don't have the video. There's a sole screenshot. It appears to be from, like, lower down. Sort of the question, would it be obvious to somebody? I don't think it would necessarily be obvious at all. We never hear from the people, despite the government submitting an affidavit from the SIS technician who's the investigator here. He supposedly saw the video, but he never even describes it. So even in these deferential standards of review, like substantial evidence or what have you, speculation never takes the place of evidence. And I'd submit this is on the side of speculation rather than evidence. Same thing for whoever Juan Lowe, the TikToker, was. We have no way of connecting him to Mr. Perez, other than this one out-of-context screenshot. And evidently, I would just point out that the food issue was apparently pretty commonplace at this facility. Well, certainly this case would suggest that. And I want to answer the scissors question. I can only speculate as well. My take on that is I believe my client was a chef at one of these points, so he had – they look like safety scissors to me, so I suspect that's why they didn't go that route. He might have been able to have – I'm speculating, though. I don't know the answer to that. That requires real speculation. That is, and I just wanted to make sure I had a different take on the government. And in terms of the – the only photos I saw in this record were the photo of the scissors and the food and then him showing his arm. There are suggestions that there were other photos screenshotted, but I did not see them as part of this record. That's because they don't relate to my client. They're not part of this record because there was just a lot of other food things going on. I have the full discovery. None of it relates to my client. I think this record is limited to this because this is all that exists with respect to my client. And I – on the de novo review issue, I don't actually think these are particularly common orders. You do see it coming out of a few specific parts of the Central District of California. And what we learned from Moss, and I did look into this, it does appear that the District of Montana uses this type of order, but I can't find another example of it other than the Sixth Circuit's decision in Pierce where they critiqued the same thing. So unless the Court has any other questions. All right. Thank you very much, Counsel. I will say this has been one of the most interesting cases I've had in my 10 years on the bench. Thank you for your briefing and your argument. This matter is submitted.
judges: HAWKINS, TASHIMA, OWENS